*543 *The opinion of the Court was delivered by [*285
Nott, J.
The first ground in this case appears to be bottomed on a dictum which has somehow found its way into our Courts, that a note over due, has lost its negotiable qualities; aud that the Court is not to be governed by the same rules of decisions with regard to it as in other cases of negotiable instruments. But that opinion I think to be founded in error ; I can find no case in support of it, neither can I see any good foundation for it in principle. It appears to me to be an unauthorized inference drawn from the rule laid down in the case of Brown v. Davies, 3 D. & E. 80. But all that the Court decided in that case was, that negotiating a note after it became due, “ gave rise to suspicion,” and entitled the drawer to the same defence against the indorsee, as he was entitled to against the original payee. And that, I believe, is as far as any of the cases have gone, except perhaps, that the same diligence as to the time of the demand will not be required, there being no time fixed within which it must be made. But in that case, as also in the case of Taylor v. Mather, mentioned in a note, it is expressly laid down, that the note still remains negotiable. Indeed, were it not so, the plaintiff would not be entitled to an action. Bor it has been decided in several late cases in this Court, that the blank endorsement of a paper, not negotiable, (not within the statute of lim.) creates no obligation on the part of the endorser. Tod v. Twitty, 1 Nott & M'Cord, 261. Robert Walker v. Scott. — (a) But if the endorser is to be ultimately liable, and the contrary is- not pretended in this case, a demand and notice are necessary. And so it was decided in the ease of Descoudres & Grooat ads. Eifert, in this Court. 1 M. Constitutional Rep. 69.[1]
2. It did not appear that Davis & Evans were insolvent. The witness said they had failed; but that was not conclusive evidence of insolvency ; and even insolvency will not dispense with notice. Young v. Price, 1 Nott & M'Cord, 438. 1 Selwyn, 353. *Lovelass on Exchange, 168. Doug. 683, Ruston v. Aspinall.[2] [*286
3. The issuing of a writ by Shackleford, was no evidence of notice, because it was after he was sued, and it did not appear that the writ was issued by him was served. So that there is no proof, even to this day, that any demand of payment was ever made of the makers .of the note.
The motion is refused.
CoiiCOOK, Johnson and RichaRDSON, JJ., concurred.

 See 1 Bay. 330; 1 McC. 199 ; 2 MeC. 398; 1 Bail. 323; 2 Bail. 1, 457; 1 Hill, 56 ; 1 Ricli. 400 ; 2 Rich. 67; 3 Rich. 73 ; 5 Rich. 541.

 Hale, 269 ; 2 Bail. 460.

 Robert Walker v. Daniel Scott.
Tried before Mr. Justice Bay, at Georgetown, Spring Term.
This action was brought to recover from an assignor the amount of the condition of a bond, assigned by the defendant, obligee of the bond, to the plaintiff, in these words: “Charleston, 6th July, 1808. Col. Shubrick, please to pay to Mr. Robert Walker, or order, the within bond, and his receipts will be in full. (Signed) Daniel Scott. (Signed) William White, witness.”
The declaration contained various counts: On an implied warranty of the sol *544 vency of the obligor: On the assignment as a bill of exchange, and for money had and received, to the use of the plaintiff.
At the trial, the plaintiff produced an execution against the estate of the obligor, on which was entered “nulla bona,” and this was to prove the insolvency of the obligor; and he also proved that the defendant received consideration for the bond.
The presiding judge directed the jury to find a verdict for the plaintiff, but they thought fit to find for the defendant.
A motion was made for a new trial, on the grounds :
1. That the verdict of the jury was against evidence, inasmuch as the insolvency of the obligor of the bond, the assignment of the obligee, and the full consideration given for the bond by the plaintiff, were fully proved.
2. That the verdict was against law. Because, from the facts proved, and the principles of law applicable to these facts, the plaintiff was entitled to a verdict against the defendant.
The first principle of law laid down by the plaintiff’s counsel was, that as a full consideration had been paid for the bond, which had turned out to be of no value, there was an obligation imposed on the defendant to repay the amount of it to the plaintiff. That the doctrine of implied warranty, so often recognized by the Court, was strictly applicable to the case. He urged, that it was immaterial what the thing sold might be, that the same obligation would be imposed, for it could not be imagined that the plaintiff would pay his money for a thing of no value ; nor can it be considered just that the defendant should keep it, when the article sold has been ascertained to be perfectly valueless.
*2871 *He next 00nten|3-ed, that if this doctrine was not supported, the order to pay, indorsed on the bond, would be considered as a bill of exchange, drawn by the defendant in favor of the plaintiff; and that in such case it is clear law, that the drawer is answerable for the solvency of the drawee; and lastly, that upon the count for money had and received, he was entitled to a recovery. That whenever a party was not entitled ex equo et bono to retain money, assumpsit would lie.
On the part of the defendant it was contended, that on the first ground the plaintiff could not recover, because the law did not create any liability in the assignor of a bond for the solvency of the obligor. That the doctrine was applicable to things intrinsically valuable, but could not apply to mere choses in action, which were only the evidence of debt, and must, of course, be forever fluctuating in value, and that the rules of law which related to the transfer of them were well settled; that no more was warranted than the right or interest of the assignor. That, on the second ground, the assignment could not be considered as a bill of exchange, for it was connected with, and had a direct reference to, the bond, an instrument in its nature not negotiable. That to consider it as such was to make the defendant liable, according to the rules of the mercantile law, without giving the benefit of them. For, before the drawer of a bill of exchange could be liable, it was necessary that a protest for non-payment and notice should be given. The only legal construction which can be given to it is, that the defendant had thereby transferred his right to the bond. That the third ground could not avail the plaintiff, for the equitable principle referred to in it did not apply. It has relation to cases where money has been paid by mistake, or undue advantage, and not to eases of contract, where a consideration'has been received for the money paid.
Two cases were relied on by the counsel: for the plaintiff, the case of Bay v. Fraser, 1 Bay’s Rep. 66 ; and for the defendant, the case of Parker v. Kennedy, 1 Bay’s Rep. 398. Upon the evidence produced in the case, it was contended, on the part of the plaintiff, that the production of the execution, with the words 11 nulla bona” endorsed thereon, was evidence of the insolvency of the obligor; and on the part of the defendant, that the words thus written on an execution was not such a return of the execution as could be deemed valid by the Court, and that if it could not be considered as a legal return, it would not be evidence of insolvency.
The opinion of the Court was delivered by
Colcock, J. I will consider the case, first, as to the plain and obvious impor *545 of the assignment itself; and, secondly, as to the obligation which may be raised by implication of law.
The law of the contract must always govern. Where there is no ambiguity, parol testimony will not be admitted to alter or enlarge it. Now, when we advert to the words of this assignment, it is found to contain a clear and express intention in the assignor to transfer his right to the bond on which it is written, and if, in such a case, parol evidence would not be permitted to alter the intention so expressed, oan it be proper to resort to presumptions to effect this object? Will it not be rejecting the higher, and admitting the lower, species of testimony ? The defendant, then, has not, by the words *used in this assignment, entered into any express agreement to be responsible for the solvency of ^ the obligor.
But it is said, the words are such as constitute a bill of exchange, and hence we are to infer that it was the intention of the defendant to become responsible for the solvency of the obligor. But this inference is, in my opinion, in direct opposition to the fact; for although no particular set of words are necessary in the construction of a bill of exchange, yet it is most obvious that the words on the bond could not have been intended so to operate, for they have a direct relation to the bond itself; “pay the within bond,” are the words used, which is not an order to paya specific sum of money. It was said, “id cerium est quod certum reddi potestbut does not the event of this transaction show that the maxim is not applicable to it. It does not comport with the usual method of doing business to draw a bill of exchange on the part of a bond, and it may therefore be considered as a forced construction of the intention of the parties to suppose that it was intended so to operate. ■
I will now inquire whether the case imposes an obligation on the defendant to be answerable for the solvency of the obligor? The mere indorsement on an instrument, not negotiable in its nature, oannot create such liability, and it cannot be contended that bonds are negotiable. The act of our own legislature, (2 Faust, 215, 1 Brev. Dig. 90J,[1] which enables an assignee to sue in Ms own name, does not make them so, nor have they ever been so considered at the common law. But it is said, that whatever may have been the intentions of the party, that he has drawn a bill of exchange, and is consequently subject to all the liabilities imposed by the law of merchants. I have shown that the words cannot be so considered, because they want one of the essentials of a bill of exchange. Admit it, however, to be such, the plaintiff cannot recover; for if it be so considered, certain duties are imposed on the plaintiff, which he has not performed. He was bound to make an immediate application for payment, and to give notice to the drawer. It does not appear that he ever applied to the obligor in his life-time. No reason has been given why he did not apply, and there is nothing to satisfy the Court that the defendant could not have obtained payment if he had received notice. It was said, however, that notice was not necessary, the bond being over due; but this is considering the bond as negotiable, which I have shown is not the case. If the indorsement is to be considered as a bill, it must be viewed as a new contract, without relation to the bond, as a bill payable out of a particular fund at sight, and then notice is indispensably necessary.
It has been long the settled doctrine of this State, that a sound price requires a sound commodity;[2] but it has always been applied to goods or effects of some intrinsic worth: to articles, the nature of which is fixed and certain. It is obvious that the nature of a bond is always uncertain. Such is the mutability of human affairs, that a man may be solvent to day and insolvent to-morrow. It sometimes happens, that a man who owes twice as much as he possesses will preserve his credit as long as he lives. The nature of such a man’s bond depends on his life, than wMch nothing can be more uncertain. Nor is the full value ever given for a bond. That is, the amount of the bond is never paid in cash; for then there could be no profit.
Upon the last count, I think, the plaintiff cannot recover. It is said, that where a consideration fails, the action for money had and received will lie. c-h-oqq *But it does not appear that the consideration has failed, or, if it has failed, *- *546 that it was not through the plaintiff’s laches. I say it is not proven that the consideration has failed, because the return of “nulla bona” is not evidence of the insolvency of the obligor. I do not hold it to be even prima facie evidence of insolvency. I mean not to say anything as to the irregularity of the return as affecting the case, for it does not require it, though I cannot forbear expressing my disapprobation of the loose and irregular manner in which the process of our Courts is generally returned. Had the execution been regularly returned and sworn to, it would not be considered as evidence of insolvency, because it is well known that such returns are often made, though irregularly, when executions are sent too late. But it is made where a defendant possesses a large estate, but may not be in the district to which the execution is sent. A man may be rich in money "or stock, which a sheriff may not be able to ascertain or lay hold of. There has not, then, been proof of such a failure of consideration as would authorize a recovery on the count for money had and received. The case of Bay v. Freazer is the first of its kind to be found in the books; it is a circuit decision, and is overruled by the case of Parker v. Kennedy.
Upon the whole, I think the plaintiff cannot recover. The verdict must remain, and the motion is discharged.
A majority of the Court concurred.
Nott, J., dissented:
It is my misfortune to differ from all my brethren on the principal question made in this case. I do not know what might have been my opinion, if the question had never before occurred. But I consider the point decided by the case of Bay v. Freazer, and I do not think that case overruled by the subsequent case of Parker v. Kennedy.
I admit, that a common assignment of a bond, in the usual form, implies no warranty of the solvency of the obligor. The purport of it by the terms in which it is expressed, is nothing more than a transfer of the right of the obligee. But a departure from that manner of assignment, or transfer, authorizes the inference that something more is intended, and that intention must be looked for in the form of the endorsement itself.
The common form of an assignment of a bond is to the following effect: “I assign all my right, title, and interest, in and to the within bond, to A, B, &c. ’ ’ But in the case of Bay v. Freazer, it was as in this case : “Pay the within to A B.” The first, I have already said, subjected the assignor to no liability. The legal implication of the latter is an ultimate responsibility. Suppose, to the first, the obligee had added, “ and I guarantee the payment of the same,” could there be any doubt that he would be bound by it ? And if such an undertaking is necessarily implied from the legal import of the endorsement, the obligation is as strong as if it was expressed. The endorsement in this case is in the form of a bill of exchange, and it will not be denied that a bill of exchange creates a liability on the part of the drawee to pay in the event of refusal or insolvency, on the part of the drawee. And whether written on the back of a bond, or on a piece of blank paper, I should be of opinion the legal operation of the words would, in that respect, be the same.
Suppose a person should write a promissory note on the back of a bond, *5>qm he not be liable to pay it ? The liability of the drawer of a bill of au-* exchange is as great as that of the maker of a x>romissory note, with this difference only, that the liability of the maker of a note is immediate and direct, that of the drawer of a bill of exchange, remote and contingent. I think, therefore, that the case of Bay v. Freazer was settled uxJon strict legal principles. In the case of Parker v. Kennedy, the obligee had made a blank endorsement, and a majority of the Court held that such an endorsement did not make him liable. They do not say the case of Bay v. Freazer is not law. The inference is, they did not consider the cases analogous. Mr. Justice Grimke, in the ojiinion which he gave in the case of Parker v. Kennedy, recognizes expressly a distinction between endorsements and assignments. But I am not aware of any distinction, except what arises from the form and effect as above stated. Prom whence I conclude, that Judge G-eimke concurred in the case of Bay v. Freazer, and also in the case of Parker v. Kennedy, considering one as not conflicting with the other.
*547 But it is said that a Blank endorsement creates the same liability as one which is filled up ; that it authorizes the endorsee to write above the name whatever he pleases. It would be a sufficient answer to that observation, to say that our courts, in the cases above mentioned, have decided that there are exceptions to that rule. Indeed, I apprehend that the difference of opinion is owing, in some measure, to the unqualified terms in which that rule is usually laid down. I do not hold that the endorsee of a bill of exchange can fill up a blank endorsement in any form he pleases.' He cannot, for instance, fill it up for a sum double the amount of the bill itself. He is not permitted to write above it an unconditional promise to pay the amount of the bill, without first calling on the drawee. He is only authorized to fill it up in the manner prescribed by the custom and usage of merchants, or, in other words, he can only fill it up in a manner consistent with the nature of the instrument on which it is made, and the implied intention of the endorser. And such is the decision in the case of Parker v. Kennedy. The usual method of transferring bonds is, by assigning over the right of the obligee to the assignee to sue and collect the money to his own use, and the Court decided that a blank endorsement on a bond only conferred an authority on the holder to fill it up according to the usual and accustomed form of assigning such instruments, and therefore no liability was created. But it is not to be inferred from thence, that it may not be endorsed in such a way as to make the endorser liable.
It is not my intention to enter into a defence of the decision in the case of Bay v. Freazer, after the very able opinion of Judge Waties, in the case of Parker v. Kennedy, on the subject. But considering the question settled, as far as that case goes, I think the decision ought to be supported.
It is not necessary to give an opinion on the other points made in this case.
See 7 Rich. 12; 1 McM. 284; 1 N. & McC. 261.

 W. 1798, 5 Stat. 330.

 Ante, 77.